UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES PAUL,<br><br>    Petitioner,<br><br>    v.<br><br>JOHN MARSHALL, Warden,<br><br>    Respondent. | NO. CV 07-899-SJO (AGR)<br><br>ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the entire file *de novo*, including the Petition; the Magistrate Judge's Report and Recommendation ("R&R"); the Objections to the R&R filed on May 13, 2009; and the records and files. Based upon the Court's *de novo* review, the Court agrees with the recommendation of the Magistrate Judge.

Petitioner objects to the Magistrate Judge's rejection of his actual innocence claim to overcome the statute of limitations. (Objections at 5-6.) In response to the R&R, which found that Petitioner had submitted "no new evidence of his innocence" (R&R at 8), Petitioner's Objections attach two declarations in support of his claim, one dated November 10, 2005 from Penny Bordbar, who states that she was with Petitioner at the time of the incident

(Objections, Ex. A ("Bordbar Decl.")); and one dated November 13, 2005 from Charlotte Richardson, Petitioner's sister, who states that she and her family encouraged Petitioner to plead guilty (*id.*, Ex. D).

Petitioner's submission of new evidence in his Objections is improper. *See Greenhow v. Secretary of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by United States v. Hardesty*, 977 F.2d 1347, 1348 (9th Cir. 1992) (en banc) (per curiam).

Nevertheless, the Court exercises its discretion to consider the two declarations attached to the Objections. *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 n.4 (9th Cir. 2005); *United States v. Howell*, 231 F.3d 615, 621-22 (9th Cir. 2000).

Petitioner pled guilty or no contest to robbery and petty theft with a prior. (LD 25 at 317-19.) Petitioner also admitted to two prior robberies, which constituted strikes under California's Three Strikes Law. (*Id.* at 320.)

Under the *Schlup*[1] "actual innocence" gateway,[2] a petitioner must show that the new evidence of innocence is "so strong that [we] cannot have confidence in . . . [the] guilty plea." *Griffin v. Johnson*, 350 F.3d 956, 963 (9th Cir. 2003). A claim of actual innocence requires a petitioner to present "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at

---

[1] *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).

[2] In the context of procedural default, the Supreme Court held that a "claim may still be reviewed in [a] collateral proceeding if [the petitioner] can establish that the constitutional error in his plea colloquy has probably resulted in the conviction of one who is actually innocent." *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) (citation and quotation marks omitted).

324. A habeas court considers all of the evidence, both "old and new, incriminating and exculpatory." *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) (citation and quotation marks omitted). Petitioner must show that "it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327; *Griffin*, 350 F.3d at 965.

As set forth in the R&R, Gutierrez, an Albertsons loss prevention officer, testified that he saw Petitioner exit the store without paying for various items, including some bottles of alcohol. (R&R at 11.) Gutierrez and his partner, Perez, followed Petitioner outside. Gutierrez identified himself as a store agent. Petitioner pushed Gutierrez in the chest. Gutierrez and Perez grabbed Petitioner's arms, and Petitioner then pushed both of them. The items Petitioner was carrying fell, and at least one bottle broke. Petitioner picked up the neck of the broken bottle, swung it from side to side, and said several times, "'Get closer, get closer, I kill you.'" Gutierrez told Petitioner to step back or he would mace him. Petitioner kept repeating, "'I kill you,'" so Gutierrez used the mace on Petitioner. Petitioner got into his car and left. Gutierrez dialed 911.[3] (*Id.*)

Petitioner states that he told his counsel that the cashier told Petitioner's sisters that "she witnessed the whole incident and that what was said on the stand [at the preliminary hearing] was a lie." (Objections at 4.) However, Petitioner has not submitted a declaration from the cashier to contradict the outcome of the investigation at the time.[4]

---

[3] Petitioner argues that the transcript of the 911 call did not describe any threats. (Objections at 6.) The contents of the 911 call were known and discussed on the record in plea discussions on October 22, 2003. (LD 29 at 3-4.) According to the discussion on the record, the 911 call stated that Petitioner threw a piece of the broken bottle at the caller. (*Id.*)

[4] In the Reporter's Transcript dated October 28, 2003, defense counsel stated that he spoke to the cashier, and it was evident that the cashier witnessed a different incident in which the person was arrested in the store and was cut up from glasses, which were not the facts of Petitioner's case. (LD 23, Ex. B at 7-8.)

3

Bordbar[5] states that she and Petitioner drove to the Albertsons store on December 16, 2002. (Bordbar Decl.) Petitioner went into the store while Bordbar waited in the car. When Petitioner exited the store, he was carrying two paper bags. Two Hispanic males, one heavy and the other skinny, grabbed Petitioner from behind. One of the paper bags fell to the ground, and a bottle of alcohol in the bag broke. Bordbar got out of the car and yelled for help. An African American male, whom Bordbar identifies as a customer, grabbed the heavy Hispanic and pulled him off Petitioner. The heavy Hispanic came back and began punching Petitioner in the face. A light-complected African American male in a security uniform came out of the store and "pulled everyone involved off into different directions." The uniformed male asked "what was going on." The two Hispanics showed their badges and began spraying Petitioner and Bordbar with mace. The uniformed officer told them to stop and told Petitioner and Bordbar to leave, which they did. (*Id.*)

Bordbar states that she was prepared to testify at the preliminary hearing in Petitioner's defense, but Petitioner's counsel would not permit her to testify because she was "a crack head." (*Id.*)

Considering all of the evidence, Petitioner has not shown that "it is more likely than not that no reasonable juror would have convicted him" of petty theft. *Schlup*, 513 U.S. at 327. Bordbar has no personal knowledge of whether Petitioner took the items without paying for them.

Nor do the Objections allege that Petitioner was actually innocent of theft, only that "no robbery occurred." (Objections at 6.) Bordbar does not deny that Petitioner brandished a broken bottle and threatened the two security officers.[6]

---

[5] Richardson was not a percipient witness and therefore has no credible evidence as to Petitioner's innocence.

[6] Moreover, Bordbar's version of events is inherently implausible. Bordbar's statement that the uniformed officer told Petitioner and Bordbar to leave makes no sense, particularly in light of the 911 call to police.

4

1  Considering all of the evidence, Petitioner has not shown that "it is more likely
2  than not that no reasonable juror would have convicted him" of robbery.  *Schlup*,
3  513 U.S. at 327.

4  Petitioner's remaining objections are without merit.[7]

5  IT IS ORDERED that the Report and Recommendation is adopted, and
6  that Judgment be entered denying the Petition and dismissing this action with
7  prejudice.

DATED: __5/22/09_____

_____
S. JAMES OTERO
United States District Judge

---

[7] Petitioner appears to argue for equitable tolling during the period May-November 2004, during which time he was incarcerated in a prison wing in which only one inmate per week was permitted access to the law library. (Objections at 9-10.)  Petitioner's conviction became final on October 12, 2004.  (R&R at 4.)  Even assuming that Petitioner would be entitled to equitable tolling until November 30, 2004 (an additional 49 days), the Petition would remain time-barred because the limitations period would have expired on November 18, 2006.  (*See id.* at 5.)

5